UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.                                    )<br>)<br>DONOVAN BOSTICK              )<br>_____ ) | CRIMINAL ACTION<br><br>NO. 06-21-08 (RBW) |

## MOTION TO SEVER DEFENDANTS FOR TRIAL

NOW COMES Defendant Donovan Bostick, by and through undersigned counsel, and pursuant to Fed. R. Crim. P. 12(b)(3)(D) & 14, moves this Court to sever his trial from that of his co-defendants. Mr. Bostick respectfully requests that he be tried individually, or at most together with co-defendant Kevin Morris only, thereby allowing him to avoid the substantial spillover prejudice that would otherwise ensue from a combined trial of all eight defendants, and also permitting his case to proceed to a separate, shorter trial that should be capable of trial before February 2009, consistent with his rights to a speedy trial as guaranteed in the Sixth Amendment to the U.S. Constitution. In support of this motion, Mr. Bostick shows as follows:

### BACKGROUND AND OVERVIEW

On August 23, 2006, Defendant Bostick was named as the last of eight defendants in a 115-count superseding indictment. Count 1 charges all eight defendants with participation in a large drug conspiracy. After Count 1, however, Mr. Bostick is not charged with any other crimes until near the very end of the superseding indictment. In Counts 110-115, Mr. Bostick is charged with six offenses relating to three "cocaine base" transactions that took place within a span of five days – on October 16, 17 & 20, 2005. For each of the three transactions, Mr. Bostick is charged with both a substantive distribution offense and with using a communication facility to facilitate that distribution. No other defendants are charged in Counts 110-115.

1

The three drug transactions that form the basis of Mr. Bostick's substantive charges in Counts 110-115 appear to be relatively small in scope. In the first transaction, on October 17, 2005, the FBI Form 302 claims that a Cooperating Witness paid Mr. Bostick $100 for some drugs. In the second transaction, on October 18, 2005, the FBI Form 302 claims that a Cooperating Witness paid Mr. Bostick $100 for drugs. For the final purchase, on October 20, 2005, the FBI Form 302 claims that a Cooperating Witness paid Mr. Bostick $200 for drugs.

The substantive charges filed against many of Mr. Bostick's co-defendants in the superseding indictment, by contrast, are often far more wide-ranging and serious. Several of Mr. Bostick's co-defendants, for example, are charged with illegally possessing high-powered firearms, including an UZI-type 9mm, a Taurus .40-caliber semi-automatic handgun, and a Smith and Wesson semi-automatic handgun, during drug-trafficking offenses. Although Mr. Bostick is not charged with any firearms offenses at all, fully 15 separate counts of this superseding indictment–Counts 4, 5, 6, 7, 8, 9, 10, 14, 15, 16, 17, 18, 19, 20, and 21–involve gun charges filed against Mr. Bostick's co-defendants. Several of these counts also involve charges filed under 18 U.S.C. § 922(g) against Mr. Bostick's co-defendants, meaning that their prior felony convictions will likely be introduced into evidence at a joint trial, with a potential for spillover prejudice against Mr. Bostick.

During the upcoming joint trial, which the Government estimates will last for three months, the Government also has noticed its intention to introduce against Defendants Cinquan Blakney and Ralph Ingram various "other acts" evidence under Fed. R. Crim. P. 404(b). *See* Government's Supplemental Motions in Limine Seeking Admission of Evidence Pursuant to Federal Rule of Evidence 404(b) (Docket # 26 & 27). These "other acts" include multiple drug charges filed against Mr. Blakney dating all the way back to 1988, as well as a 1991 murder charge, and "other acts" evidence against Mr. Ingram involving prior drug offenses and a 2002 robbery conviction. *Id.* The Government has not contended that Mr. Bostick is involved in any of these other acts. If Mr. Bostick's case is not severed, he also would face a risk of prejudicial spillover prejudice not only from the evidence noted above, but also from the introduction of evidence on a variety of other wrongful activities in which he is not alleged to be involved, such as the evience that will be presented on an obstruction of justice charge already filed against certain of his co-defendants (Count 69 of the superseding indictment), and any additional 404(b) evidence that may be noticed in the future against his other co-defendants.

This is not a situation in which Mr. Bostick's case is inseparable from the other co-defendants. The Government itself has previously disclosed that it is attempting to "wire" certain plea offers. The fact that the Government's plea offers to Defendants Bostick and Morris have been "wired" together reveals a logical break between their charges and those filed against the other co-defendants, and clearly demonstrates that the allegations against them are capable of being tried separately from the other co-defendants in this case.[1]

---

[1] Defendant Kevin Morris is charged in the superseding indictment with the general conspiracy charge in Count 1, and then with substantive drug offenses in Counts 72-109. Like Mr. Bostick, Defendant Morris is not charged with any of the firearms or obstruction offenses listed in the superseding indictment. His only overlap with the other co-defendants – except for Count 1 – involves the fact that Cinquan Blakney is jointly charged with Mr. Morris on some, but not all, of his telephone counts.

3

ARGUMENT AND CITATION OF AUTHORITIES

"[A] defendant in a joint trial has a recognized right to a 'severance of defendants or ... whatever other relief justice requires' if it appears that he is 'prejudiced by a joinder of offenses or of defendants in an indictment ... or by such joinder for trial together.'" United States v. Sampol, 636 F.2d 621, 645-47 (D.C. Cir. 1980). While decisions concerning severance are always left to a trial court's discretion, this Circuit has noted in this context that:

> In applying this well established rule, however, **courts have always kept in mind the problems inherent in [the] trial of conspiracy cases involving numerous defendants.** The Supreme Court has long recognized that in such cases, "the liberal rules of evidence and the wide latitude accorded the prosecution may, and sometimes do, operate unfairly against an individual defendant...." Glasser v. United States, 315 U.S. 60, 76, 62 S.Ct. 457, 468, 86 L.Ed. 680 (1942). **The "dangers of transference of guilt" are such that a court should use "every safeguard to individualize each defendant in his relation to the mass."** Kotteakos v. United States, 328 U.S. 750, 774, 66 S.Ct. 1239, 1252, 90 L.Ed. 1557 (1946). See Blumenthal v. United States, 332 U.S. 539, 559-60, 68 S.Ct. 248, 92 L.Ed. 154 (1948).

United States v. Mardian, 546 F.2d 973, 980 (D.C. Cir. 1976)(emphasis added).

Under Fed. R. Crim. P. 14, this Court is authorized to balance the possible prejudice to a defendant of a joint trial against the concerns of judicial economy. Under the facts and circumstances of this case, that balance favors a severance, for several different reasons. Cf. Rhone v. United States, 365 F.2d 980, 981 (D.C. Cir. 1966) ("Prejudice from joinder of defendants may arise in a wide variety of circumstances.").

4

A. <u>Severance of Mr. Bostick's Case Will Prevent Spillover Prejudice & Confusion</u>

As noted by the D.C. Circuit in *Mardian*:

> Particularly where there is a great disparity in the weight of the evidence, strongly establishing the guilt of some defendants, the danger persists that the guilt will improperly "rub off" on the others. *United States v. Kelly*, 349 F.2d 720, 756-59 (2d Cir. 1965).... In *Kelly*, the Court of Appeals for the Second Circuit emphasized that severance is among the most important safeguards available to minimize the risk of prejudice.... This court has often expressed its acceptance of the rule announced in *Kelly*, requiring severance when the evidence against one or more defendants is "far more damaging" than the evidence against the moving party.

Under the facts of this case, Defendant Bostick is entitled to a severance from his co-defendants. Mr. Bostick's six substantive counts allege that he received a grand total of $400 in three hand-to-hand drug sales that occurred over the course of five days. These charges and the evidence against him appear <u>de minimis</u> when compared to the evidence of the superseding indictment's other serious crimes involving high-powered firearms and willful obstruction of justice filed against his co-defendants; a joint trial would therefore cause undue prejudice and confusion of the evidence against him.

In *Sampol*, the D.C. Circuit reversed a conviction after finding abuse of discretion in the trial court's failure to sever a defendant who had endured a joint trial involving co-defendants facing much more severe charges. Significantly, the Circuit declared in *Sampol* that the problem of "guilt by association" from the spillover prejudice and confusion of the evidence had not been cured even by "court instructions [that] were conciencientious attempts by the trial court to limit the admission of evidence for only relevant purposes." Accordingly, and in conformity with the *Kelly* rule adopted by the D.C. Circuit in *Mardian*, a severance should be granted to Defendant Bostick under the facts of this case.

5

### B. Severance of Mr. Bostick's Case Will Promote His Speedy Trial Rights

Second, and perhaps more significantly, a severance of defendants will promote the speedy trial rights of Mr. Bostick. At present, the Government has estimated that a joint trial of all defendants – including its proof on the 100+ counts in which Mr. Bostick is not charged, and the substantial 404(b) evidence against his co-defendants – will take a full three months. Although neither Mr. Bostick nor his counsel have sought continuances of the trial in this case, this Court's need to schedule a block of trial time this lengthy, while also accommodating the schedules of both Government counsel and Mr. Bostick's co-defendants' defense counsel, has led this Court to delay the trial in this case; it is now scheduled to begin in February 2009 – more than three years after this case began, and approximately 2½ years after Mr. Bostick's arrest.

It should not be necessary for Mr. Bostick to wait so long for a trial that will involve more than 100 counts in which he has no involvement, when the 7 charges he faces are fairly discrete – Count 1 plus the six counts of Counts 110-115, which allege three relatively minor drug transactions that occurred over 5 days. Since Mr. Bostick alone is charged in Counts 110-115, the only possible overlap in proof that the Government might suggest in its proof would have to stem from Count 1. But Count 1 alleges a conspirary involving a variety of different controlled substances; in contrast, Mr. Bostick's charged substantive counts involve only cocaine base. If the Government truly plans to try to broadly present proof of a wide-ranging "catch-all" conspiracy under Count 1, involving transactions or substances in which Mr. Bostick may have no involvement, that too could create its own risks of spillover prejudice to Mr. Bostick. Those risks can be eliminated if Mr. Bostick's case is severed for trial and the Government is forced to prove its case against Mr. Bostick on Count 1 without any "guilt by association."

There is no doubt that Mr. Bostick's case can be severed, and that even on Count 1, the anticipated proof as to each defendant will not be identical. The Government's "wired" plea offers essentially concede that a trial that is limited to co-defendants Bostick and co-defendant Morris is possible. If the other co-defendants were to accept their wired plea offers but co-defendants Bostick and/or Morris did not accept theirs, the trial contemplated by this motion would naturally ensue on its own. At the February 29, 2007 Status Conference, the Government also appeared to concede that this trial would be shorter if some of the defendants accepted their wired pleas. So the question for this Court is not whether it can, but whether it *should* exercise its discretion to sever Mr. Bostick's trial–discretion expressly provided in Fed. R. Crim. P. 14.

The equities favor a severance here, particularly given the lengthy delays already extant in this case. Stated simply, Mr. Bostick submits that a trial can be held before next February on what is in esssence a 7-count indictment against him, and that he should not have to continue to be detained on the instant charges until a joint trial can be held. Under this Court's recent Order (Docket #156), all of Mr. Bostick's motions must be fully briefed no later than June 16, 2008, and those motions could be promptly resolved and his case scheduled for a seperate trial thereafter.

The D.C. Circuit has made clear that speedy trial issues are an appropriate factor to consider in granting a severance. *See Sims v. United States*, 405 F.2d 1381 (D.C. Cir. 1968) (describing a shorter "16-month delay between arrest and trial," and discussing how this "delay illustrates another reason why severance should have been granted"). Consistent with the Sixth Amendment, which guarantees Mr. Bostick a constitutional right to a speedy trial, this Court should grant a severance and schedule an earlier date for Mr. Bostick's trial on these charges.

C. Severance of Mr. Bostick's Case Also Will Minimize Certain Risks of a Joint Trial

Finally, severance of Mr. Bostick's case will also minimize the various risks of problems that a joinder of these defendants could cause at trial, some of which could necessitate a new trial or reversal. While the Government has not yet identified the statements of Mr. Bostick's co-defendants that it will seek to introduce at trial, discovery in this case has revealed that several of Mr. Bostick's co-defendants – unlike Mr. Bostick – allegedly made post-arrest statements to the Government. In its filings before this Court, the Government already is resisting efforts to suppress those post-arrest statements of Mr. Bostick's co-defendants. *See, e.g.*, Government's Opposition to Defendant's Motion to Suppress Statements (Docket #138) (Sean Blakney statements); Government's Opposition to Defendant's Supplemental Motion to Suppress Evidence (Docket #139)(Ralph Ingram statements); Government's Opposition to Defendant's Motion to Suppress Tangible Evidence and Statements (Docket #140)(James Morgan statements). If the government is allowed to introduce statements of Mr. Bostick's co-defendants that discuss his activities, in a joint trial where they can then refuse to testify under the Fifth Amendment, Mr. Bostick's trial would clearly need to be severed from any such co-defendant's trial in order to protect Mr. Bostick's Sixth Amendment right to confront and cross-examine the witnesses against him, as noted in Bruton v. United States, 391 U.S. 123, 126 (1968).[2]

---

[2] The only way the government could use the out-of-court statements of a non-testifying co-defendant at a joint trial would be to try to redact the statements to eliminate any reference to the other defendants. *See Richardson v. Marsh*, 481 U.S. 200, 211 (1987). Given the nature of such statements, any such redaction would be unlikely, and also could lead to confusion as to context and potential issues concerning compliance with the evidentiary rule of completeness.

A joint trial also could prejudice Mr. Bostick if those statements or other actions at trial demonstrate likely irreconcilable defenses the co-defendants may raise, or if it becomes apparent that Mr. Bostick's co-defendants could testify favorably on his behalf in a separate trial. *See* Zafiro v. United States, 506 U.S. 534, 539 (1993) (defendant might suffer prejudice if essential exculpatory evidence that would be available to defendant if tried alone were unavailable in joint trial). *See also* Rhone v. United States, 365 F.2d 980 (D.C. Cir. 1966) (prejudice can also arise "where the defendants present conflicting and irreconcilable defenses and there is a danger that the jury will unjustifiably infer that this conflict alone demonstrates that both are guilty, and where only one defendant testifies and urges the jury to draw an adverse inference from his co-defendant's silence").

In a joint trial with eight defendants, the possibility of such conflicts developing, with co-defendants pointing an accusing finger at each other, and with conflicting and irreconcilable defenses emerging, is a genuine concern. If those issues arise, this Court will inevitably face a renewed request for severance mid-trial. Under Rule 14's discretionary authority, this Court is not required to wait until it is presented with a situation that could disrupt an ongoing trial before granting severance. Even if no *Bruton*, *Zafiro* or *Rhone* concerns are sufficiently ripe at this stage to warrant a severance by themselves, the <u>cumulative effect</u> of the various factors favoring severance – the disparity of the charges Mr. Bostick faces vis-à-vis his co-defendants, the speedy trial implications, and these risks combined – balance in favor of granting a severance now.

It is not an answer to these concerns for the Government to suggest that such risks can be cured through limiting instructions. In <u>Sims</u>, the D.C. Circuit found reversible error in the trial court's failure to grant a severance, despite "cautionary instructions to the jury to consider [the incriminating statements] only as to the particular declarant and to disregard them, as hearsay, against the other appellants." In reversing, the D.C. Circuit expressly stated that limiting instructions are not necessarily an adequate substitute for severance. *Id.* ("<u>Bruton v. United States</u> clearly shows the hollowness of such cautionary instructions and illuminates the charade of pretending that the jury can put out of its mind damaging evidence it had just heard").

At a minimum, before denying this request for severance, this Court should require the Government to deliver for inspection all of the defendants' statements, as specifically authorized by Fed. R. Crim. P. 14(b), so that this Court can evaluate in advance of trial the potential for upcoming <u>Bruton</u> or <u>Zafiro</u> problems, establish a record, and take actions as needed. *See., e.g.,* <u>United States v. Baker</u>, 98 F.3d 330, 335 (8th Cir. 1996) (defendant prejudiced by trial court's refusal to sever; admission of co-defendant's statement was not curable by jury instructions).

CONCLUSION

The balance favors a severance of Mr. Bostick's case for trial. This is not a situation in which, if severance is granted, all of the same proof will need to be presented twice. Fully 108 of the 115 Counts in the superseding indictment do not even charge Mr. Bostick. A separate trial of Mr. Bostick, or even Mr. Bostick tried jointly with Mr. Morris, will lead to a trial that should be considerably shorter than a trial of all eight defendants, since at a minimum it will not require any proof of the the superseding indictment's 15 separate firearms charges, its obstruction of justice charge, and the Rule 404(b) evidence noticed to date. Severance will eliminate the spillover prejudice and potential conflict risks noted above, while promoting the important constitutional speedy trial rights to which Mr. Bostick is entitled.

WHEREFORE, Mr. Bostick respectfully moves this Court to sever his trial from that of his co-defendants, and to schedule his separate trial prior to February 2009, consistent with his Sixth Amendment right to a speedy trial.

Respectfully submitted,

/s/
Gregory S. Smith
D.C. Bar No. 472802
913 East Capitol Street, S.E.
Washington, D.C. 20003
(202) 460-3381

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing MOTION TO SEVER DEFENDANTS FOR TRIAL is being served upon the United States, through Assistant United States Attorneys Anthony Scarpelli and George Eliopoulos, as well as on counsel for each of Mr. Bostick's co-defendants, via the Electronic Case Filing system. This 15th day of April, 2008.

/s/
Gregory S. Smith

11